**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RON ZOLLER**                                               **CIVIL ACTION**

**VERSUS**                                                   **CASE NO. 16-1837**

**ZURICH AMERICAN INSURANCE**                                **SECTION: "G"(4)**
**COMPANY, et al.**

## ORDER AND REASONS

Before the Court is Defendant Selective Insurance Company's ("Selective") "Motion for
Summary Judgment on Insurance Coverage/Alternative Motion for Declaratory Judgment."[1]
Having considered the motion, the memoranda in support and in opposition, the record, and the
applicable law, the Court will grant the motion.

**A.      *Factual Background***

This matter involves a motor vehicle accident that allegedly occurred on February 8, 2015.
In the petition for damages, Plaintiff Ron Zoller ("Plaintiff") alleges that Defendant Charles
Nikolauzyk ("Nikolauzyk") rear-ended him while traveling westbound on Interstate-12 in St.
Tammany Parish, Louisiana.[2] At the time of the incident, Plaintiff alleges that Nikolauzyk was
driving a motor vehicle owned by Defendants Larry Newsom and Linda Newsom (collectively,
"the Newsoms").[3] At that time, Nikolauzyk was allegedly employed by Defendant Newsom
Trucking, Inc ("Newsom Trucking").[4] Plaintiff also alleges that at the time of the accident, the

---

[1] Rec. Doc. 87.

[2] Rec. Doc. 1-4 at 2.

[3] *Id.* at 2.

[4] Rec. Doc. 5.

motor vehicle Nikolauzyk was driving was hauling a trailer owned by either Schantz Manufacturing, Inc. ("Schantz") or Ray Cammick Shows ("RCS").[5]

## B.    Procedural Background

On February 2, 2016, Plaintiff filed a petition for damages against Nikolauzyk, the Newsoms, and the Newsoms' insurer Zurich American Insurance, Co. ("Zurich") in the 22nd Judicial District Court for the Parish of St. Tammany.[6] On March 4, 2016, Nikolauzyk and Zurich removed the case to this Court.[7] On March 9, 2016, Plaintiff filed a first amending and supplemental complaint naming Newsom Trucking as a defendant.[8]

On November 7, 2016, Plaintiff filed a second amending and supplemental complaint naming Hallmark Specialty Insurance Company ("Hallmark") as an insurer of Newsom Trucking.[9] On July 31, 2017, Plaintiff filed a third amending and supplemental complaint alleging that T.H.E. Insurance Company ("T.H.E."), the insurer of RCS, may have provided insurance coverage for the trailer being pulled by Nikolauzyk.[10] On November 21, 2017, Plaintiff filed a fourth amending and supplemental complaint against RCS, Schantz, and Schantz's insurer Selective.[11]

---

[5] Rec. Doc. 59 at 3.

[6] Rec. Doc. 1-4 at 2.

[7] Rec. Doc. 1.

[8] Rec. Doc. 5.

[9] Rec. Doc. 29. The second amending and supplemental complaint is incorrectly labeled as the "First Amending and Supplemental Complaint."

[10] Rec. Doc. 42.

[11] Rec. Doc. 59.

On October 9, 2018, Selective filed the instant motion for summary judgment.[12] On November 9, 2018, Hallmark filed an opposition to the motion.[13] On November 12, 2018, Plaintiff filed an opposition to the motion.[14] On November 12, 2018, T.H.E. filed an opposition to the motion.[15] With leave of Court, Schantz filed a reply brief in further support of the motion on November 19, 2018.[16]

## II. Parties' Arguments

### A.    *Selective's Arguments in Support of the Motion for Summary Judgment*

In the instant motion, Selective seeks summary judgment or a declaratory judgment finding that the business auto insurance policy (the "Selective Policy") it issued to Schantz provided no coverage for Newsom Trucking, the Newsoms, or Nikolauzyk because those parties do not qualify as "insureds" under the omnibus provision of the Selective Policy.[17] Alternatively, if the Court finds omnibus coverage under the Selective Policy, Selective seeks summary judgment or a declaratory judgment that any such coverage is only excess, or secondary, coverage over and above the insurance policy issued by Zurich, and should be applied on a pro-rata basis with the insurance policy issued to Newsom Trucking by Hallmark.[18]

---

[12] Rec. Doc. 87.

[13] Rec. Doc. 110.

[14] Rec. Doc. 112.

[15] Rec. Doc. 115.

[16] Rec. Doc. 124.

[17] Rec. Doc. 87 at 1.

[18] *Id.*

Selective notes that the Selective Policy was issued to Shantz in Illinois.[19] Selective asserts that Louisiana courts generally apply the law of the state where an insurance policy was issued to govern the interpretation of the terms of the policy.[20] However, Selective asserts that "there may be no need to conduct a choice of law analysis as the law of Louisiana and Illinois are generally the same with respect to issues of insurance policy interpretation."[21] Under either Illinois or Louisiana law, Selective argues that the interpretation of an insurance policy is a question of law, and the party seeking to establish coverage has the burden of proving every fact essential to establish that his claim is within the policy coverage.[22]

Selective asserts that the Selective Policy does not provide coverage to Nikolauzyk, the Newsoms, or Newsom Trucking because those parties are not "insureds" under the policy.[23] Selective contends that Schantz is the only named insured under the Selective Policy.[24] Selective notes that the liability coverage section of the policy provides that it "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[25] Selective further notes that the Selective Policy defines an insured as the

---

[19] Rec. Doc. 87-1 at 5.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 6–7.

[23] *Id.* at 7.

[24] *Id.* at 7–8.

[25] *Id.* at 8.

named insured, i.e. Schantz, or a person other than the named insured who uses a covered "auto" that is either owned, hired, or borrowed by Schantz.[26]

Selective contends that the trailer does not qualify as an "auto" owned, hired, or borrowed by Schantz.[27] Selective asserts that the Selective Policy defines the term "auto" as: (1) "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads" or (2) "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."[28] However, the Selective Policy excludes "mobile equipment," which is defined in part as "[b]ulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads" or vehicles "maintained primarily for purposes other than the transportation of persons or cargo."[29] Selective points to a declaration of Michael Schantz, the President and CEO of Schantz Manufacturing, which states the trailer at issue in this case is a food trailer that is not self-propelled and cannot be driven.[30] The declaration further states that the trailer was designed primarily for food preparation and service while in a stationary position and was not designed for transportation of persons or cargo.[31] Therefore, Selective argues that the trailer is "mobile equipment" because it was designed for use principally

---

[26] *Id.* at 9.

[27] *Id.* at 10.

[28] *Id.*

[29] *Id.* at 11.

[30] *Id.* (citing Rec. Doc. 87-5).

[31] *Id.* (citing Rec. Doc. 87-5).

off public roads and maintained primarily for purposes other than transportation of persons or cargo.[32]

Selective notes that the Selective Policy includes an endorsement, which provides that "mobile equipment" will be treated as an "auto" when it meets the following three requirements: "(1) [it] is being driven under its own power, (2) [it] is being driven in public rights of way, and (3) [it] is subject to a compulsory insurance or financial responsibility law or other mandatory motor vehicle insurance law in the state where it is licensed or principally garaged."[33] Selective contends that the trailer does not meet these requirements because it was not being driven under its own power.[34] Accordingly, Selective asserts that a plain reading of the policy language establishes that the trailer is not an "auto," and any use of the food trailer cannot trigger "insured" status for Newsom Trucking, the Newsoms, or Nikolauzyk.[35]

Selective also argues that the motor vehicle driven by Nikolauzyk at the time of the accident does not qualify as a covered "auto" under the Selective Policy because the motor vehicle was not owned, hired, or borrowed by Schantz.[36] Selective contends that the terms borrowed or hired refer to vehicles procured by the insured for its own use, dominion, and control, and does not apply when an insured hires an independent contractor to transport something and the contractor uses its own vehicle.[37] Accordingly, Selective asserts that the motor vehicle driven by

---

[32] *Id.* at 12.

[33] *Id.* at 12–13.

[34] *Id.* at 13.

[35] *Id.*

[36] *Id.* at 14.

[37] *Id.*

Nikolauzyk at the time of accident does not qualify as a covered "auto" under the Selective Policy.[38]

Alternatively, Selective asserts that if the Court finds omnibus coverage under the Selective Policy that any such coverage is only excess, or secondary, coverage over and above the insurance policy issued by Zurich, and should be applied on a pro-rata basis with the insurance policy issued to Newsom Trucking by Hallmark.[39] Selective contends that it should be undisputed that Zurich provides primary coverage to its insureds Newsom Trucking, the Newsoms, and Nikolauzyk.[40] Furthermore, Selective asserts that any coverage under the Selective Policy would be excess coverage because the motor vehicle was not owned by Schantz.[41] Selective notes that Newsom Trucking also had an excess liability policy issued by Hallmark.[42] In cases where two or more policies provide excess coverage, Selective asserts that "both Louisiana and Illinois courts hold that the competing 'excess' clauses are 'mutually repugnant' and 'cancel each other out,' therefore, both 'excess' policies will share the exposure on a 'pro-rata' basis."[43] Because the Hallmark Policy provides $4,000,000 of coverage and the Selective Policy provides $1,000,000 of coverage, Selective contends that the pro-rata split of any excess liability would be 80% to Hallmark and 20% to Selective.[44]

---

[38] *Id.* at 15.

[39] *Id.* at 16.

[40] *Id.*

[41] *Id.* at 21.

[42] *Id.* at 22.

[43] *Id.* at 23.

[44] *Id.* at 24.

**B.    *Hallmark's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Hallmark contends that there are no genuine issues of fact that would preclude coverage in favor of Newsom Trucking, the Newsoms, and Nikolauzyk on the Selective Policy because these entities are insureds under the plain language of the Selective Policy.[45] Specifically, Hallmark contends that the food trailer Nikolauzyk was hauling at the time of the accident is a "trailer" under the terms of the Selective Policy because it had "a load capacity of 2,000 pounds or less designed primarily for travel on public roads."[46] Hallmark notes that Schantz is classified as a "trailer manufacturer" in the Selective Policy, the certificate of origin for the food trailer specifically listed it as a "trailer," and the bill of sale lists the food trailer as a "motor vehicle."[47]

Hallmark contends that the declaration of Michael Schantz is self-serving and states without evidentiary support that the trailer was "designed primarily for food preparation and service while in the stationary position" and that the trailer was "not designed for transportation of persons or cargo."[48] Hallmark argues that the trailer "clearly serves the dual purpose of allowing its customers to travel the public roads from venue to venue across the country with the customers equipment so that the customer can avoid having to set up an independent concession stand and/or rely upon the venue to provide a stand and/or equipment."[49] Hallmark contends that the assertion that the trailer was not designed to haul cargo defies logic because Selective admits that the trailer

---

[45] Rec. Doc. 110 at 1.

[46] *Id.* at 2.

[47] *Id.* at 3–4.

[48] *Id.* at 4.

[49] *Id.* at 6.

was loaded with kitchen equipment.[50] Accordingly, Hallmark asserts that the food trailer is a "trailer" under the terms of the Selective Policy.[51]

Finally, Hallmark argues that for the reasons set forth in Hallmark's motion for summary judgment, the limits of the Selective Policy must be exhausted before the excess coverage provided for in the Hallmark Policy applies.[52] Accordingly, Hallmark contends that Selective's motion for summary judgment should be denied.[53]

### C. Plaintiff's Arguments in Opposition to the Motion for Summary Judgment

In opposition, Plaintiff asserts that the parties agree that the Zurich Policy provides the primary coverage in this case.[54] Plaintiff contends that the Hallmark Policy is an excess policy to the Zurich Policy and should apply pro-rata to either the T.H.E. Policy or the Selective Policy, depending on who owned the trailer at the time of the accident.[55]

Plaintiff argues that Selective's assertion that the Selective Policy does not apply is without merit because a trailer is specifically covered as an "auto" under the Selective Policy.[56] Plaintiff contends that Selective's argument that the trailer is "mobile equipment" is unavailing because the Selective Policy defines "mobile equipment" as "bulldozers, farm machinery, forklifts and other

---

[50] *Id.* at 6–7.

[51] *Id.* at 8.

[52] *Id.*

[53] *Id.* at 9.

[54] Rec. Doc. 112 at 2.

[55] *Id.* at 1.

[56] *Id.* at 3.

vehicles designed for use principally off public roads."[57] Plaintiff argues that the food trailer clearly does not fall within the category of farm machinery, forklifts, and other off road vehicles. Therefore, Plaintiff argues that the Selective Policy applies to this accident.[58]

Furthermore, Plaintiff contends that Michael Schantz testified that he entered a verbal agreement with RCS whereby RCS owned the trailer prior to delivery.[59] Therefore, Plaintiff argues that there is a genuine issue of material fact precluding summary judgment on the issue of ownership of the trailer.[60]

Finally, Plaintiff contends that the excess insurance policies are to be applied pro-rata.[61] Plaintiff notes that: (1) Section IV of the Selective Policy states it is "excess over any other collectible insurance"; (2) Section I of the Hallmark Policy states it is "in excess of the applicable limits of the underlying insurance"; and (3) Paragraph B(5) of Section IV of the T.H.E. Policy states "while a covered auto which is a trailer is connected to another vehicle, the Liability Coverage this coverage form provides for the trailer is excess while it is connected to a motor vehicle you do not own."[62] Plaintiff contends that "when there is a conflict between two policies, each containing an excess clause or one containing an excess clause and one containing an escape clause, the Louisiana courts have consistently held the two conflicting clauses to be mutually repugnant and ineffective."[63]  According to Plaintiff, the result of finding that the excess and

---

[57] *Id.*

[58] *Id.*

[59] *Id.* at 7.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 8.

[63] *Id.* (citing *Dette v. Covington Motors, Inc.*, 426 So. 2d 718 (La. App. 1 Cir. 1983); *Blanchard v. Rodrigue*,

escape clauses are mutually repugnant and ineffective is to prorate the loss between the excess insurers.[64] Therefore, Plaintiff argues that the motions for summary judgment filed by Hallmark, Selective, and T.H.E. should be denied and the excess policies should be applied pro-rata.[65]

### D.    T.H.E.'s Arguments in Opposition of the Motion for Summary Judgment

T.H.E. opposes Selective's motion for summary judgment to the extent it alleges that any coverage exists under the T.H.E. policy because T.H.E. argues that on the date of the accident Schantz, not RCS, was the owner of the trailer.[66] T.H.E. does not dispute Selective's assertion that the trailer constitutes "mobile equipment."[67] Alternatively, if any omnibus coverage is found under the T.H.E. policy, T.H.E. contends that such coverage is only excess, or secondary, coverage over and above the Zurich Policy issued to Newsom Trucking, and should be applied on a pro-rata basis with any other applicable insurance coverage.[68]

First, T.H.E. argues that Illinois law should apply to the issue of ownership of the trailer because: (1) the trailer was constructed in Illinois; (2) Schantz is domiciled in Illinois; (3) the Bill of Sale was executed in Illinois; (4) the temporary permit issued by Schantz was executed in Illinois; (5) the Certificate of Origin signed by Schantz lists Illinois as the relevant state; and (6) the agreement for the trailer contained a choice of law provision stating that any dispute between

---

340 So.2d 1001 (La. App. 1 Cir. 1976), *writs denied*, 341 So.2d 1129, 1130 (La. 1977)).

[64] *Id.* at 8.

[65] *Id.* at 9.

[66] Rec. Doc. 115 at 1, 7.

[67] *Id.*

[68] *Id.*

Schantz and RCS shall be governed by the law of Illinois.[69] T.H.E. contends that Selective and Schantz have tacitly admitted that Schantz was the owner of the trailer at the time of the incident because neither argues that Schantz was not the owner in their respective motions for summary judgment.[70] Furthermore, T.H.E. asserts that under Illinois law the issue of when ownership passes from one person to another is a question of the intention of the parties.[71] T.H.E. contends "[t]he fact that Schantz retained possession of the completed trailer and exhibited the trailer at a trade show combined with the fact that the trailer was not paid off until it was delivered to Ray Cammack Shows is evidence that the intention of the parties was to have ownership retained with Schantz until the full payment was paid, which occurred at final delivery."[72] Furthermore, Schantz asserts that the Bill of Sale executed on February 17, 2015 stated that as of that time Schantz was still the owner of the trailer.[73]

Second, T.H.E. states that it agrees with Selective's argument that the trailer is "mobile equipment."[74] Furthermore, T.H.E. notes that the T.H.E. Policy contains identical language as the Selective Policy regarding "mobile equipment."[75]

---

[69] *Id.* at 3.

[70] *Id.* at 4.

[71] *Id.* (citing *Finnan v. Johnson*, 111 Ill. App. 3d 479, 483 (Ill. App. Ct. 2d Jan. 6, 1983)).

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 5–6.

Alternatively, if the T.H.E. Policy provided coverage for the trailer at the time of the accident, T.H.E. argues that the policy would be excess coverage to the Zurich Policy and should apply on a pro-rata basis with any other excess coverage.[76]

### E.    Selective's Arguments in Further Support of the Motion for Summary Judgment

In the reply brief, Selective disputes Hallmark and T.H.E.'s assertion that Selective and Schantz tacitly admitted that Schantz owned the trailer at the time of the accident.[77] Selective asserts that it did not discuss the disputed issue of ownership in its motion for summary judgment because it was not dependent on the issue of ownership.[78]

Next, Selective argues that the issue of whether the food trailer is a "trailer" as contemplated by the Selective Policy is not determinative of coverage because the food trailer is not a covered "auto" as it is instead "mobile equipment."[79] Selective does not deny that, generally, a "trailer" can qualify as an "auto" under its policy, but it contends that if the "trailer" is "mobile equipment," it is excluded from the definition of an "auto."[80] Furthermore, Selective argues that the declaration of Michael Schantz is not "self-serving" and is the best evidence of the primary purpose of the trailer because the statement comes directly from the manufacturer regarding the

---

[76] *Id.* at 6.

[77] Rec. Doc. 124 at 1.

[78] *Id.* at 2.

[79] *Id.*

[80] *Id.* at 3.

trailer's intended primary purpose.[81] Selective also disputes Hallmark's argument that the permanently attached kitchen equipment in the food concession trailer is "cargo."[82]

Finally, Selective again argues in the alternative that if the Court finds coverage under the Selective Policy, such coverage should be applied pro-rata with the excess liability policy issued by Hallmark.[83]

## III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[84] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[85] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[86] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[87]

---

[81] *Id.* at 4.

[82] *Id.* at 5.

[83] *Id.* at 6.

[84] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[85] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[86] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[87] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[88] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[89] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[90] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[91] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[92] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[93]

---

[88] *Celotex,* 477 U.S. at 323.

[89] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp*., 939 F.2d 1293, 1299 (5th Cir. 1991)).

[90] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[91] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[92] *Little*, 37 F.3d at 1075.

[93] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

Furthermore, it is well-established that "[u]nauthenticated documents are improper as summary judgment evidence."[94]

## IV. Analysis

In the instant motion, Selective seeks summary judgment finding that the Selective Policy it issued to Schantz provides no coverage for Newsom Trucking, the Newsoms, or Nikolauzyk because those parties do not qualify as "insureds" under the omnibus provision of the Selective Policy.[95] Specifically, Selective argues that the trailer does not qualify as an "auto" owned, hired, or borrowed by Schantz, but instead Selective asserts that the trailer is "mobile equipment" which is excluded from coverage under the policy.[96] T.H.E. opposes Selective's motion, but only to the extent it alleges that any coverage exists under the T.H.E. Policy.[97] Hallmark and Plaintiff both oppose Selective's motion, and argue that the trailer is covered under the Selective Policy because it is an "auto" and not "mobile equipment."[98]

As an initial matter, the Court must determine the law to apply to the interpretation of the Selective Policy. Federal courts apply the choice of law provisions of the forum state.[99] The Louisiana Civil Code article 3515 generally provides that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the case." Article 3537 provides that when applying choice of law

---

[94]  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

[95] Rec. Doc. 87 at 1.

[96] Rec. Doc. 115 at 1, 7.

[97] *Id.* at 1, 7.

[98] Rec. Docs. 110, 112.

[99] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

principles to a contract, courts should "assess the strength of the relevant policies of the involved states in light of the place of negotiation, formation, and performance of the contract as well as the location of the object of the contract."[100] "Applying these principles, Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy."[101]

Here, Selective asserts that Illinois law should apply to interpretation of the Selective Policy because the policy was issued in Illinois.[102] No party disputes this assertion. Accordingly, the Court will apply Illinois law to interpretation of the instant contract.

The Supreme Court of Illinois has explained the interpretation of insurance policies under Illinois law as follows:

> Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. While we will not strain to find ambiguity where none exists, neither will we adopt an interpretation which rests on "gossamer distinctions" that the average person, for whom the policy is written, cannot be expected to understand. When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose. Thus, an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists.[103]

---

[100] *Id.* (citing La. Civ. Code art. 3537).

[101] *Id.* (internal citations omitted).

[102] Rec. Doc. 87-1 at 5.

[103] *Munoz v. Fernandez*, 930 N.E.2d 999, 1003-4 (Ill. 2010) (internal citations omitted).

Under Illinois law, the interpretation of the provisions of an insurance policy is a question of law.[104]

Section II of the Selective Policy, titled "Liability Coverage" provides:

> We will pay all sums an 'insured' legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".[105]

Section II of the Selective Policy goes on to define an "insured" as the named insured, i.e. Schantz, or "[a]nyone else while using with [Schantz's] permission a covered "auto" [Schantz] own[s], hire[s] or borrow[s]."[106]

No party disputes Selective's contention that the motor vehicle driven by Nikolauzyk is not a covered "auto" because it was not owned, hired, or borrowed by Schantz. Therefore, the Selective Policy will only provide coverage for the accident at issue in this case if the food trailer Nikolauzyk was hauling at the time of the accident falls under the definition of an "auto."

The Selective Policy defines the term "auto" as:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."[107]

Plaintiff and Hallmark go to great lengths to argue that the food trailer at issue in this case is in fact a "trailer" as defined by the policy. However, Selective does not dispute that the food

---

[104] *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455 (Ill. 2010).

[105] Rec. Doc 87-4 at 195.

[106] *Id.*

[107] *Id.* at 203.

trailer is a "trailer."[108] Selective does not deny that, generally, a "trailer" can qualify as an "auto" under its policy, but it contends that if the "trailer" is "mobile equipment," it is excluded from the definition of an "auto."[109] Reading the provisions of the policy together, it is clear that a trailer will qualify as an "auto" under the Selective Policy, unless the trailer is deemed to be "mobile equipment" because "mobile equipment" is expressly excluded from the definition of an "auto." Accordingly, the Court must determine whether the food trailer is "mobile equipment."

The Selective Policy defines "mobile equipment" in pertinent part as:

> any of the following types of land vehicles, including any attached machinery or equipment:
> 1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads; . . .
> 6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. . . .[110]

Selective points to a declaration of Michael Schantz, the President and CEO of Schantz Manufacturing, which states the trailer at issue in this case is a "custom food trailer" that is not self-propelled and cannot be driven.[111] The declaration further states that the trailer is "essentially a mobile kitchen on wheels" that was "designed primarily for food preparation and service while in a stationary position."[112] The declaration also provides that the food trailer "is not designed for transportation of persons or cargo and is not intended to be used for that purpose."[113]

---

[108] Rec. Doc. 124.

[109] *Id.* at 3.

[110] Rec. Doc. 87-4 at 204–05.

[111] Rec. Doc. 87-5 at 2.

[112] *Id.*

[113] *Id.*

Based on this declaration, Selective argues that the trailer is "mobile equipment" because it was designed for use principally off public roads and maintained primarily for purposes other than transportation of persons or cargo.[114] In response, Hallmark asserts that the declaration is self-serving and without evidentiary support.[115] However, Hallmark fails to recognize that Michael Schantz actually manufactured the food trailer and is therefore likely in the best position to testify to the food trailer's primary purpose and use. Furthermore, the declaration is also supported by Michael Schantz's deposition testimony, where he stated that the trailer was not designed for transportation of persons or cargo and was not intended to be used for that purpose.[116]

Neither Hallmark nor Plaintiff present any other evidence regarding the primary use of the food trailer. Instead, Hallmark argues that the food trailer "clearly serves the dual purpose of allowing its customers to travel the public roads from venue to venue across the country with the customers equipment so that the customer can avoid having to set up an independent concession stand and/or rely upon the venue to provide a stand and/or equipment."[117] However, the Selective Policy defines "mobile equipment" as "vehicles maintained *primarily* for purposes other than the transportation of persons or cargo."[118] It is of no moment that the food trailer serves a dual purpose because the undisputed evidence in the record establishes that the food trailer was built for the *primary* purpose of food preparation and service, not for the primary purpose of transportation of

---

[114] Rec. Doc. 87-1 at 12.

[115] Rec. Doc. 110 at 4.

[116] Rec. Doc. 110-3 at 66, 96–97.

[117] Rec. Doc. 110 at 6.

[118] Rec. Doc. 87-4 at 205 (emphasis added).

persons or cargo. Accordingly, the Court finds that the food trailer is "mobile equipment" under the terms of the Selective Policy.

Finally, the Selective Policy includes an endorsement, which provides that "mobile equipment" will be treated as an "auto" when it meets the following three requirements: "(1) [it] is being driven under its own power, (2) [it] is being driven in public rights of way, and (3) [it] is subject to a compulsory insurance or financial responsibility law or other mandatory motor vehicle insurance law in the state where it is licensed or principally garaged."[119] The parties do not dispute that the food trailer cannot be driven under its own power. A plain reading of the policy language establishes that the trailer is "mobile equipment," which is expressly excluded from the definition of an "auto" under the terms of the Selective Policy. Therefore, any use of the food trailer cannot trigger "insured" status for Newsom Trucking, the Newsoms, or Nikolauzyk. Accordingly, because there are no genuine issues of material fact in dispute, the Court finds that Selective is entitled to judgment as a matter of law.

## V. Conclusion

For the foregoing reasons, the Court finds that there are no material facts in dispute and Selective is entitled to judgment as a matter of law. A plain reading of the policy language establishes that the trailer is "mobile equipment," which is expressly excluded from the definition of an "auto" under the terms of the Selective Policy. Therefore, any use of the food trailer cannot trigger "insured" status for Newsom Trucking, the Newsoms, or Nikolauzyk. Accordingly,

---

[119] *Id.* at 226.

**IT IS HEREBY ORDERED** that Selective Insurance Company's ("Selective") "Motion for Summary Judgment on Insurance Coverage/Alternative Motion for Declaratory Judgment."[120] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this ___10th___ day of December, 2018.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[120] Rec. Doc. 87.