# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RON ZOLLER                                         **CIVIL ACTION**

**VERSUS**                                         **CASE NO. 16-1837**

**ZURICH AMERICAN INSURANCE**              **SECTION: "G"(4)**
**COMPANY, et al.**

## ORDER AND REASONS

Before the Court is Defendants Ray Cammack Shows' ("RCS") and T.H.E. Insurance Company's ("T.H.E.") "Motion for Summary Judgment."[1] Having considered the motion for summary judgment, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion dismissing Ray Cammack Shows and T.H.E.[2] as parties in the case.

## I. Background

### A.     *Factual Background*

This matter involves a motor vehicle accident that allegedly occurred on February 8, 2015. In the petition for damages, Plaintiff Ron Zoller ("Plaintiff") alleges that Defendant Charles Nikolauzyk ("Nikolauzyk") rear-ended him while traveling westbound on Interstate-12 in St. Tammany Parish, Louisiana.[3] At the time of the incident, Plaintiff alleges that Nikolauzyk was driving a motor vehicle owned by Defendants Larry Newsom and Linda Newsom (collectively,

---

[1] Rec. Doc. 105.

[2] In a prior order, the Court found that the trailer involved in the litigation is "mobile equipment" that is not covered under the policy issued to Schantz Manufacturing, Inc. by Selective Insurance Company of South Carolina. Rec. Doc. 133. T.H.E. is being dismissed as a party in this order because the T.H.E. Policy, which is similar to the Selective Policy, also does not cover a trailer that is classified "mobile equipment." Though T.H.E. does not raise this argument in the instant motion, T.H.E. previously presented the argument in its opposition to Selective's motion for summary judgment. *See* Rec. Doc. 115 at 5–6. The Court hereby incorporates that argument into this motion.

[3] Rec. Doc. 1-4 at 2.

"the Newsoms").[4] At that time, Nikolauzyk was allegedly employed by Defendant Newsom Trucking, Inc ("Newsom Trucking").[5] Plaintiff also alleges that at the time of the accident the motor vehicle Nikolauzyk was driving was hauling a trailer ("the Trailer") owned by either Schantz Manufacturing, Inc. ("Schantz") or RCS.[6]

## B. Procedural Background

On February 2, 2016, Plaintiff filed a petition for damages against Nikolauzyk, the Newsoms, and the Newsoms' insurer Zurich American Insurance, Co. ("Zurich") in the 22nd Judicial District Court for the Parish of St. Tammany.[7] On March 4, 2016, Nikolauzyk and Zurich removed the case to this Court.[8] On March 9, 2016, Plaintiff filed a first amending and supplemental complaint naming Newsom Trucking as a defendant.[9]

On November 7, 2016, Plaintiff filed a second amending and supplemental complaint naming Hallmark Specialty Insurance Company ("Hallmark") as an insurer of Newsom Trucking.[10] On July 31, 2017, Plaintiff filed a third amending and supplemental complaint alleging that T.H.E., the insurer of RCS, may have provided insurance coverage for the trailer being pulled by Nikolauzyk.[11] On November 21, 2017, Plaintiff filed a fourth amending and supplemental

---

[4] *Id.* at 2.

[5] Rec. Doc. 5.

[6] Rec. Doc. 59 at 3.

[7] Rec. Doc. 1-4 at 2.

[8] Rec. Doc. 1.

[9] Rec. Doc. 5.

[10] Rec. Doc. 29. The second amending and supplemental complaint is incorrectly labeled as the "First Amending and Supplemental Complaint."

[11] Rec. Doc. 42.

complaint against RCS, Schantz, and Shantz's insurer Selective Insurance Company of South Carolina ("Selective").[12]

On November 6, 2018, RCS and T.H.E. filed the instant motion for summary judgment.[13] On November 8, 2018, Hallmark filed an opposition to the motion.[14] On November 12, 2018, Plaintiff filed an opposition.[15] On November 18, 2018, Schantz filed an opposition.[16] With leave of Court, RCS and T.H.E. filed a reply on November 21, 2018.[17]

## II. Parties' Arguments

### A.  *RCS and T.H.E.'s Arguments in Support of the Motion for Summary Judgment*

RCS and T.H.E. urge the Court to grant summary judgment in their favor because they contend that the insurance policy T.H.E. issued to RCS (the "T.H.E. Policy") does not provide coverage for Plaintiff's claim.[18] First, RCS and T.H.E. argue that RCS did not own the trailer and T.H.E.'s policy only covers vehicles owned by RCS.[19] Next, RCS and T.H.E. assert that RCS cannot be held vicariously liable for the negligence of Nikolauzyk.[20] Finally, RCS and T.H.E. argue that T.H.E.'s policy does not cover the driver of the truck owned by Newsom.[21]

---

[12] Rec. Doc. 59.

[13] Rec. Doc. 105.

[14] Rec. Doc. 109.

[15] Rec. Doc. 111.

[16] Rec. Doc. 118.

[17] Rec. Doc. 128.

[18] Rec. Doc. 105-1 at 5.

[19] *Id.* at 5–8.

[20] *Id.* at 9–10.

[21] *Id.* at 11–12.

### 1. Ownership of the Trailer

RCS and T.H.E. assert that before deciding who owns the trailer, the Court must determine which state's substantive law applies.[22] RCS and T.H.E. argue that under Louisiana's conflict of laws statute, Illinois law applies because it is the state whose "policies would be most seriously impaired if its law were not applied to the issue of ownership."[23] RCS and T.H.E. contend that Schantz and RCS's only connection to Louisiana is the motor vehicle accident at issue in this case.[24] Furthermore, RCS argues that its relationship with Schantz "is centered in Illinois."[25] RCS and T.H.E. allege that Illinois is where the trailer was manufactured, Schantz is domiciled, and the bill of sale was executed.[26] RCS and T.H.E. further argue that the purchase agreement for the trailer provides that any dispute between them regarding the construction and sale of the trailer will be governed by Illinois law."[27]

RCS and T.H.E. assert that under Illinois law, "it is axiomatic that the question of when ownership has passed from one person to another for purposes of insurance coverage is a question of the intention of the parties."[28] According to RCS and T.H.E., the "the undisputed facts establish that ownership of the trailer had not yet passed to RCS at the time of the accident."[29] RCS and T.H.E. assert that RCS made a $140,000 down payment on the trailer on December 5, 2014, but it did not

---

[22] *Id.* at 5.

[23] Rec. Doc. 105-1 at 5 (citing La. Civ. Code. Ann. art. 3515).

[24] *Id.* at 6.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* (quoting *Finnan v. Johnson*, 111 Ill. App. 3d 479, 444 N.E.2d 290 (1983)).

[29] *Id.*

receive possession of the trailer, finalize payment, or receive a bill of sale until after February 10, 2015.[30] RCS and T.H.E. allege that Schantz retained possession of the trailer and "transported [it] to Florida to use it in connection with the marketing of [Schantz'] business" from February 3 to February 7, 2015.[31] RCS and T.H.E. contend that the incident at issue occurred on February 8, 2015, while Schantz was shipping the trailer to RCS in Houston, but RCS had not yet taken possession and had not paid the full purchase price.[32] RCS and T.H.E. assert that final payment was not made until February 10, 2015, when the trailer was delivered and the bill of sale was not executed until February 17, 2015.[33] RCS and T.H.E. contend that "Schantz's Bill of Sale notes that, at the time of its execution, Shantz is the 'lawful owner' of the trailer."[34] Accordingly, RCS and T.H.E. argue that Schantz, not RCS, was the legal owner of the trailer at the time of the accident.[35]

Because RCS did not own the trailer at the time of the accident, RCS and T.H.E. argue that the T.H.E. Policy does not cover the trailer.[36] According to RCS and T.H.E., its policy only provides coverage for "covered autos" under the policy, and the trailer was not listed as covered under the T.H.E. Policy.[37] Further, RCS and T.H.E. assert that though the policy provides coverage for "owned autos you acquire after the policy begins," RCS had not acquired the trailer at the time of the accident so the

---

[30] *Id.* at 1–4.

[31] *Id.* at 7.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 8.

[37] *Id.*

trailer was likewise not covered under T.H.E.'s policy.[38] Therefore, T.H.E. argues that its "policy affords no coverage….[and] plaintiff has no viable claim against T.H.E."[39]

### 2. RCS' Liability to Plaintiff

Even assuming that RCS owned the trailer at the time of the accident, RCS and T.H.E. argue that RCS cannot be held liable for the accident because there is no evidence that the trailer caused, or contributed to, the accident in any way.[40] RCS and T.H.E. aver that under Louisiana's conflict of laws provision governing tort actions, Louisiana law would apply to the negligence claims because Louisiana is the state where the conduct that caused the alleged injury to Plaintiff occurred.[41] RCS and T.H.E. assert that the elements of a negligence claim under Louisiana law require the breach of a duty and that said breach caused the Plaintiff's injury.[42] RCS and T.H.E. contend that Plaintiff cannot show that the trailer was defective, "the use of the trailer failed to meet any appropriate standard of care, nor that any breach by RCS caused his injury."[43]

RCS and T.H.E. also argue vicarious liability under Louisiana law only applies where the company is the "master or employer" of the person responsible for the damage.[44] RCS and T.H.E. assert that no one, not even Plaintiff, disputes that Newsom was Nikolauzyk's employer.[45] RCS and T.H.E. further argue that because Schantz hired Newsom to transport the trailer and RCS was

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 9–10.

[41] *Id.* at 10.

[42] *Id.* at 9.

[43] Rec. Doc. 105-1 at 9.

[44] *Id.* at 10.

[45] *Id.*

uninvolved in this process, RCS had "absolutely no relationship" with Nikolauzyk or Newsom Trucking.[46] Thus, RCS and T.H.E. argue that RCS cannot be liable to Plaintiff for negligence even if it did own the trailer and summary judgment should be granted on the negligence claims.[47]

### 3. T.H.E.'s Policy as Applied to the Newsom Trucking Driver

Finally, RCS and T.H.E. assert that Nikolauzyk is not covered under the T.H.E. Policy because RCS did not own the trailer and Nikolauzyk was not using the trailer for its intended purpose.[48] RCS and T.H.E. rely on the language in the T.H.E. policy that an insured is "Anyone else while using with your permission a covered 'auto' you own, hire or [borrow]."[49] RCS and T.H.E. again allege that RCS did not own the trailer so it was not covered under the policy.[50] RCS and T.H.E. further argue that the trailer was not being used by Nikolauzyk because "the transportation of the trailer is not a use of the trailer for its intended purpose."[51] Thus, RCS and T.H.E.

---

[46] *Id.*

[47] *Id.* at 9–10.

[48] *Id.* at 11.

[49] Rec. Doc. 105-15 at 60. The full language of the policy reads:

> 1. Who Is An Insured
> The following are "insureds":
> a. You for any covered "auto".
> b. Anyone else while using with your permission a covered "auto you own, hire or borrowexcept;[sic]
> (1) The owner or anyone else from whom you hire or borrow a covered "auto".
> This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

[50] *Id.*

[51] *Id.* at 12.

argue that Nikolauzyk is not an insured party under the policy.[52] For this reason and the others listed above, RCS and T.H.E. contend that they should be dismissed as defendants in the case.[53]

**B.      *Hallmark's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Hallmark argues that if RCS is found to be the owner of the trailer at the time of the accident, the T.H.E. Policy would provide coverage for Newsom Trucking, the Newsoms, and Nikolauzyk.[54] Hallmark asserts that "when a tractor and trailer are connected, they become one vehicle for the purposes of transporting things."[55] Hallmark contends that RCS and T.H.E. do not dispute that the item manufactured by Schantz and transported by Newsom is anything "other than a trailer."[56] Hallmark asserts that because the object is a trailer that was connected to Newsom's tractor, the Newsoms, Newsom Trucking, and Nikolauzyk are covered under the T.H.E. Policy.[57] Therefore, Hallmark requests that to the extent that the Court finds RCS to be the owner of the trailer, the Court should deny summary judgment on the issue of coverage by the T.H.E. Policy.[58]

**C.      *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Plaintiff asserts that the parties agree that the Zurich Policy provides the primary coverage in this case.[59] Plaintiff contends that the Hallmark Policy is an excess policy to

---

[52] *Id.*

[53] *Id.*

[54] Rec. Doc. 109 at 1.

[55] *Id.* at 3 (citing *Mays v. Aetna Cas. & Sur. Co.*, 242 So. 2d 264 (La. Ct. App. 1970)).

[56] *Id.* at 3–4.

[57] *Id.* at 2.

[58] *Id.* at 4.

[59] Rec. Doc. 111 at 2.

the Zurich Policy and should apply pro-rata to either the T.H.E. Policy or the Selective Policy depending on who owned the trailer at the time of the accident.[60]

Plaintiff argues that Selective's assertion that the Selective Policy does not apply is without merit because trailers are specifically covered as "autos" under the Selective Policy.[61] Plaintiff contends that Selective's argument that the trailer is "mobile equipment" is unavailing because the Selective Policy defines "mobile equipment" as "bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads."[62] Plaintiff argues that the food trailer clearly does not fall within the category of farm machinery, forklifts, and other off road vehicles. Therefore, Plaintiff argues that the Selective Policy applies to this accident.[63]

Plaintiff argues summary judgment should not be granted on RCS' and T.H.E.'s motion because a genuine issue of material fact remains on the question of ownership of the trailer.[64] Plaintiff asserts that though RCS insists it did not own the trailer because it had not taken delivery, Michael Schantz testified that he entered a verbal agreement with RCS whereby RCS owned the trailer prior to delivery.[65] Plaintiff avers that this creates a genuine issue of material fact.[66] Plaintiff also contends that if the Court finds that RCS is the owner of the trailer, the trailer is covered under T.H.E.'s policy because it is a trailer and not mobile equipment.[67]

---

[60] *Id.* at 1.

[61] *Id.* at 3.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 7.

[65] *Id.*

[66] *Id.*

[67] *Id.*

Finally, Plaintiff contends that the excess insurance policies are to be applied pro-rata.[68] Plaintiff notes that: (1) Section IV of the Selective Policy states it is "excess over any other collectible insurance"; (2) Section I of the Hallmark Policy states it is "in excess of the applicable limits of the underlying insurance"; and (3) Paragraph B(5) of Section IV of the T.H.E. Policy states "while a covered auto which is a trailer is connected to another vehicle, the Liability Coverage this coverage form provides for the trailer is excess while it is connected to a motor vehicle you do not own."[69] Plaintiff contends that "when there is a conflict between two policies, each containing an excess clause or one containing an excess clause and one containing an escape clause, the Louisiana courts have consistently held the two conflicting clauses to be mutually repugnant and ineffective."[70] According to Plaintiff, the result of finding that the excess and escape clauses are mutually repugnant and ineffective is to prorate the loss between the excess insurers.[71] Therefore, Plaintiff argues that the motions for summary judgment filed by Hallmark, Selective, and T.H.E. should be denied and the excess policies should be applied pro-rata.[72]

## D. *Schantz's Arguments in Opposition to the Motion for Summary Judgment*

In opposition, Schantz argues that summary judgment should be denied because a genuine issue of law and/or fact remains on the issue of whether RCS is the owner of the trailer.[73] Schantz contests RCS' and T.H.E.'s argument that the intention of the parties was for Schantz to "maintain

---

[68] *Id.*

[69] *Id.* at 8.

[70] *Id.* (citing *Dette v. Covington Motors, Inc.*, 426 So. 2d 718 (La. App. 1 Cir. 1983); *Blanchard v. Rodrigue*, 340 So.2d 1001 (La. App. 1 Cir. 1976), *writs denied*, 341 So.2d 1129, 1130 (La. 1977)).

[71] *Id.* at 8.

[72] *Id.* at 9.

[73] Rec. Doc. 118.

ownership of the food trailer once it left the tradeshow."[74] Schantz contends that "[t]he sworn deposition testimony of Schantz Manufacturing clearly establishes that Schantz Manufacturing intended for and believed Ray Cammack Shows owned the custom food trailer at the time of the incident."[75] Schantz asserts that RCS expressly contracted with Schantz Manufacturing for a trailer designed to its specifications, and this custom-built trailer was solely for RCS.[76] Schantz alleges that RCS "dictated how the concession trailer would look, what the concession trailer would be used for, and what equipment would be installed in the concession trailer. [It] was not a mass-produced product that could easily be re-sold to another customer."[77] Furthermore, Schantz points to Michael Schantz's statement that because the trailer was custom designed for RCS and not sellable to anyone else, he always believed that it was owned by RCS.[78]

Schantz further argues that normally, "the deposit is what determines the sale," and the remaining balance on the trailer would be paid upon completion.[79] Schantz alleges that prior to the trailer being displayed at the trade show in Florida, it made a special agreement for RCS to pay the remaining balance after the trade show.[80] Schantz asserts that the only reason payment was made in February was because RCS indicated that it did not have the funds at the beginning of February and would make the final payment the following week.[81] Schantz also contends that it is

---

[74] *Id.* at 6.

[75] *Id.*

[76] *Id.*

[77] *Id.* at 2 (internal citations omitted).

[78] *Id.* at 3.

[79] *Id.* at 6.

[80] *Id.* at 4.

[81] *Id.*

customary business practice to mail the bill of sale after the trailer has been delivered.[82] Thus, Schantz argues that even if RCS made the final payment before the trade show, RCS would not have received the bill of sale until after the trailer was delivered.[83] Schantz also argues that RCS initially agreed to pick up the trailer in Florida, but RCS later indicated it could not do so because it was "in a pinch."[84] Schantz states that it agreed to arrange for transport of the trailer from Florida to Texas on behalf of RCS, but RCS paid $1,500 as part of the transport cost.[85]

Finally, Schantz asserts that despite RCS' reliance on the bill of sale being executed on February 17, 2015, the certificate of title is not determinative of ownership.[86] Schantz argues that *State Farm Mutual Automobile Insurance Co. v. Lucas*, a case cited by RCS, "leaves open the possibility that legal ownership of the food trailer could have transferred before execution of the Bill of Sale/Certificate of Title."[87] Schantz incorporates the arguments above to show that RCS did in fact own the trailer, but because RCS continues to dispute this, "the question of ownership is by no means settled."[88] Thus, Schantz argues that summary judgment should be denied.[89]

### E.    *RCS and T.H.E.'s Arguments in Further Support of the Motion for Summary Judgment*

In further support of their motion, RCS and T.H.E. argue that summary judgment should be granted because "[n]o reasonable Jury could conclude that ownership transferred as Schantz

---

[82] *Id.*

[83] *Id.*

[84] *Id.* at 4.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 8.

[88] *Id.*

[89] *Id.*

contends."[90] RCS and T.H.E. assert that the only supporting evidence Schantz offers to support its assertion that RCS owned the trailer is the "self-serving testimony of its principal, Michael Schantz."[91] RCS and T.H.E. allege that there is no "competent evidence" to show that Schantz and RCS agreed that RCS was the owner.[92]

RCS and T.H.E. assert that Schantz owned the trailer because "ownership is not transferred when the first installment is made, as the trailer did not exist at that time."[93] Further, RCS and T.H.E. argue that "[t]here was no benefit for RCS to assume ownership of the trailer prior to payment and delivery. Furthermore, the trailer was being delivered to RCS only after Schantz displayed it at a trade show for Schantz's own benefit."[94] Finally, RCS and T.H.E. contend that Schantz even "admits that if the trailer had been damaged during transport, it would have been responsible for any repairs."[95] For these reasons, RCS and T.H.E. argue that there is no genuine issue of fact that Schantz owned the trailer and summary judgment should be granted.[96]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[97] When assessing whether a dispute as to any material fact exists, the court

---

[90] Rec. Doc. 128 at 3.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 2.

[96] *Id.* at 4.

[97] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[98] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[99] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[100] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[101]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[102] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[103] If the moving party satisfies

---

[98] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[99] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[100] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[101] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[102] *Celotex*, 477 U.S. at 323.

[103] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[104]

In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[105] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[106] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[107]

## IV. Analysis

As stated more fully above, RCS and T.H.E. argue that summary judgment should be granted because RCS did not own the trailer at the time of the accident and there is not independent liability to Plaintiff.[108] In opposition, Hallmark does not contest the issue of ownership, but contends that if RCS owned the trailer at the time of the accident, the T.H.E. Policy would provide coverage.[109] In opposition, Plaintiff contends that there is an issue of fact in dispute regarding

---

[104] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[105] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).
[106] *Little*, 37 F.3d at 1075.

[107] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[108] Rec. Doc. 105-1.

[109] Rec. Doc. 109.

ownership of the trailer.[110] Schantz similarly argues that an issue of law and/or fact remains in dispute regarding whether RCS, and not Schantz, is the owner of the trailer.[111] In reply, RCS and T.H.E. contend that Schantz has not offered any evidence to show that RCS owned the trailer at the time of the accident.[112]

## A.    *Ownership of the Trailer*

As an initial matter, the Court must determine the law to apply to the interpretation of the agreement between Schantz and RCS for the sale of the trailer. Federal courts apply the choice of law provisions of the forum state.[113] The Louisiana Civil Code article 3515 generally provides that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the case." Article 3537 provides that when applying choice of law principles to a contract, courts should "assess the strength of the relevant policies of the involved states in light of the place of negotiation, formation, and performance of the contract as well as the location of the object of the contract."[114]

Here, RCS and T.H.E. assert that Illinois law applies to interpretation of the agreement.[115] Schantz is an Illinois-based company that entered into the contract with RCS from its Illinois facility.[116] Schantz conducted its communications with RCS from Illinois, manufactured the trailer in Illinois, received and processed RCS' payment in Illinois, and disseminated the bill of sale from

---

[110] Rec. Doc. 111.

[111] Rec. Doc. 118.

[112] Rec. Doc. 128.

[113] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

[114] *Id.* (citing La. Civ. Code art. 3537).

[115] Rec. Doc. 105-1.

[116] *Id.*

Illinois.[117] Further, none of the parties in the case dispute that Illinois law applies to interpretation of the agreement. Accordingly, the Court will apply Illinois law to this issue.

Under Illinois law, "[i]t is the intent of those involved in the passing of ownership/title to another that is crucial to making a determination as to who the owner of the vehicle is."[118] RCS and T.H.E. insist that Schantz owned the trailer at the time of the accident because RCS had not completed payment, taken possession, or received a bill of sale.[119] These assertions describe what occurred between Schantz and RCS, but RCS does not provide evidence of when the parties intended that ownership of the trailer would pass from Schantz to RCS. RCS presents the bill of sale, which notes that "at the time of its execution, Schantz is the 'lawful owner' of the trailer."[120] Yet, under Illinois precedent, "while the transfer of title is a factor which the court considers in arriving at a determination regarding ownership or delivery, that fact alone is not dispositive or conclusive evidence that ownership has passed."[121] Under Illinois law, "one can own an automobile though the certificate of title is in the name of another."[122]

---

[117] *Id.*

[118] *United Equitable Ins. Co. v. Hare*, 2016 IL App (1st) 143878-U, ¶ 34.; *Perry v. Saleda*, 34 Ill.App.3d 729, 737, 340 N.E.2d 314, 321 (1975) ("The time of passing of title is a question of the intent of the parties."); *Mullen v. Farm Bureau*, 21 Ill.App.2d 280, 285, 157 N.E.2d 679, 683 (1959) ("The time of passing of title of an automobile sold is a question of the intention of the parties").

[119] Rec. Doc. 105-1.

[120] *Id.* at 7.

[121] *Finnan v. Johnson*, 444 N.E.2d 290, 293 (Ill. App. Ct. 1983).

[122] *State Farm Mut. Auto. Ins. Co. v. Lucas*, 365 N.E.2d 1329, 1332 (Ill. App. Ct. 1977).

Outside of the transfer of title, Illinois courts examine a variety of factors in determining the intent of the parties, including when payment was completed,[123] the intended date of transfer,[124] actual possession,[125] and whether the parties expressly agreed which actions would signal the transfer of ownership.[126] Here, neither RCS nor Schantz present an agreement or other written evidence stating what would constitute as transferring ownership. RCS made its final payment for the trailer on February 10, 2015, after the accident, but Schantz argues that RCS was initially supposed to complete payment at the trade show, which ended on February 7, 2015, before the accident.[127] Schantz also contends that though RCS received possession of the trailer after the accident, it was customary practice for RCS to have picked up the trailer from the trade show before the accident.[128] Thus, the evidence is contradictory on which date the parties intended for payment to be completed and possession to transfer.

RCS asserts that Schantz' evidence rests solely on the "self-serving testimony of its principal, Michael Schantz," and Schantz' evidence should thus not be considered.[129] The Fifth Circuit has declared that "a party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite

---

[123] *See, e.g., Mullen v. Farm Bureau*, 157 N.E.2d 679, 683 (Ill. App. Ct. 1959); *Perry v. Saleda*, 340 N.E.2d 314, 321 (Ill. App. Ct. 1975); *Country Mutual Ins. Co. v. Aetna Life & Casualty Ins. Co*., 387 N.E.2d 1037 (Ill. App. Ct. 1979).

[124] *See Perry*, 340 N.E.2d 314.

[125] *See State Farm Mut. Auto. Ins. Co.*, 365 N.E.2d 1329; *Country Mutual Ins. Co.*, 387 N.E.2d 1037.

[126] *See Finnan*, 444 N.E.2d 290.

[127] Rec. Doc. 105-6 at 71.

[128] *Id.* at 97-98.

[129] Rec. Doc. 128 at 3.

scenario."[130] Yet, RCS does not dispute anything that Michael Schantz stated in his deposition. Further, although the Fifth Circuit may find that a deposition is self-serving if there is evidence belying said testimony, none of the parties in this case present evidence contesting Michael Schantz's statements. Therefore, Michael Schantz' testimony is not insufficient to defeat summary judgment.

Given the parties' conflicting evidence of when the parties intended for ownership of the trailer to pass from Schantz to RCS, there remains a genuine issue of material fact. Nevertheless, the issue of ownership is irrelevant in light of the T.H.E. Policy language defining what autos are covered. In its opposition to Selective's motion for summary judgment, T.H.E. adopted Selective's argument that the trailer is "mobile equipment" not covered by the Selective Policy's language.[131] T.H.E. asserted that "the T.H.E. policy of insurance contains identical language. [Thus] if the trailer is deemed 'mobile equipment' under the Selective policy, the same would hold true for the T.H.E. policy."[132] None of the parties dispute this assertion. Though T.H.E. does not present this argument in the instant motion, because the argument was raised in another memorandum in the record, the Court adopts that argument into its current analysis.

In the Court's order regarding Selective's motion for summary judgment, the Court found that "[a] plain reading of the policy language establishes that the trailer is 'mobile equipment,' which is expressly excluded from the definition of an 'auto' under the terms of the Selective Policy. Therefore, any use of the food trailer cannot trigger 'insured' status for Newsom Trucking, the

---

[130] *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447 (5th Cir. 2013) (finding that the defendant's deposition and affidavit are self-serving and "insufficient to create an issue of fact.").

[131] *See* Rec. Doc. 115 at 5–6.

[132] *Id.* (citing Rec. Doc. 115-11).

Newsoms, or Nikolauzyk."[133] Accordingly, because the T.H.E. Policy also excludes coverage of mobile equipment, the Court finds that T.H.E. is entitled to judgment as a matter of law because the undisputed facts in the record establish that the trailer is "mobile equipment," which is expressly excluded from the definition of an "auto" under the terms of the T.H.E Policy.

## B.    RCS' Liability to Plaintiff

Even assuming that RCS owned the trailer at the time of the accident, RCS and T.H.E. argue that RCS cannot be held liable for the accident because there is no evidence that the trailer caused, or contributed to, the accident in any way.[134] RCS and T.H.E. also argue that RCS cannot be held vicariously liable for the acts of Nikolauzyk because RCS did not employ him.[135] No party disputes these assertions.

The Court must determine the law to apply to the events surrounding the accident on February 8, 2015. As stated above, federal courts apply the choice of law provisions of the forum state.[136] The Louisiana Civil Code article 3515 generally provides that "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct."

Here, the collision occurred entirely in Louisiana and RCS asserts that Louisiana law applies. No party disputes this assertion. Accordingly, the Court will apply Louisiana law to its analysis of the instant collision.

---

[133] Rec. Doc. 133 at 21.

[134] Rec. Doc. 105-1 at 9–10.

[135] *Id.*

[136] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

Article 2315 of the Louisiana Civil Code establishes a general cause of action for negligence: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[137] In determining whether to impose liability under Article 2315, Louisiana courts employ a duty-risk analysis, whereby a plaintiff must establish the following five elements: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)."[138] "[C]ause-in-fact is found when defendant's conduct was a substantial factor in the injury; it need not be the sole cause."[139] "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[140]

The principle of vicarious liability or respondeat superior is codified at Louisiana Civil Code article 2320. Article 2320 provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed."[141] The Louisiana Supreme Court has recognized that even if an employment relationship exists "the employer will

---

[137] La. Civ. Code art. 2315.

[138] *Audler v. CDC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (internal citations omitted).

[139] *Manuel v. Shell Oil Co.*, 94-590 (La. App. 5 Cir. 10/18/95); 664 So. 2d 470, 475 (citations omitted) (applying the substantial factor causation standard for benzene exposure).

[140] *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La. 1994).

[141] La. Civ. Code art. 2320.

not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of the employment with the former."[142]

In the motion for summary judgment, RCS points to portions of the record showing that it did not employ Nikolauzyk, did not hire Newsom Trucking to deliver the trailer, and did not create a defect that caused Plaintiff's injury. In response, no party has come forward with any facts showing that RCS was a cause-in-fact of Plaintiff's injury or that RCS can be held liable for the actions of Nikolauzyk. As a result, there are no material facts in dispute, and the Court finds that RCS is entitled to judgment as a matter of law.

## V. Conclusion

For the foregoing reasons, the Court finds that there are no material facts in dispute and RCS and T.H.E. are entitled to judgment as a matter of law. The undisputed facts in the record establish that the trailer is "mobile equipment," which is expressly excluded from the definition of an "auto" under the terms of the T.H.E Policy. [143] Therefore, any use of the food trailer cannot trigger "insured" status for Newsom Trucking, the Newsoms, or Nikolauzyk. Further, RCS is not directly or vicariously liable to Newsom Trucking, the Newsoms, or Nikolauzyk for negligence. Accordingly,

---

[142] *Brasseaux v. Town of Mamou*, 99-1584 (La. 1/19/00); 752 So. 2d 815, 820 (internal citations omitted).

[143] In a prior order, the Court found that the trailer involved in the litigation is "mobile equipment" that is not covered under the Selective Policy. Rec. Doc. 133. T.H.E. is being dismissed as a party in this order because its policy, which is identical to Selective's, also does not cover a trailer that is classified "mobile equipment." Though T.H.E. does not raise this argument in the instant motion, T.H.E. previously presented the argument in its opposition to Selective's motion for summary judgment. *See* Rec. Doc. 115 at 5–6. The Court hereby incorporates that argument into this motion and finds that T.H.E. should be dismissed as a party.

**IT IS HEREBY ORDERED** that Defendants Ray Cammack Shows' and T.H.E. Insurance Company's "Motion for Summary Judgment."[144] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this __10th__ day of December, 2018.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[144] Rec. Doc. 105.